UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------X
ROBERT STEVENS,

               Plaintiff,                               09-CIV-5237 (CM)

   - against -                                 **MEMORANDUM OF LAW**
                                                        **IN OPPOSITION TO**
THE STATE OF NEW YORK, et al.,             **DEFENDANT'S MOTION FOR**
                                                         **SUMMARY JUDGMENT**

               Defendants.
----------------------------------------------------------X

       For plaintiff's Preliminary Statement and Statement of Facts, we incorporate herein by reference those sections, respectively, of the Complaint in this action.  We also respectfully refer the Court to Plaintiff's Affidavit submitted in opposition to defendants' Motion for Summary Judgment for a further statement of relevant, material facts.

## ARGUMENT

       "The standards governing motions for summary judgment are well-settled. A court may grant summary judgment only where there is no genuine issue of material fact and the moving party is therefore entitled to judgment as a matter of law. *See Fed R. Civ. P. 56(c)*; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 585-87, 89 L. Ed. 2d 538, 106 S. Ct. 1348 (1986)*. Accordingly, the court's task is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986)*." Lamberson v. Six West Retail Acquisition, Inc., et al., 122 F. Supp. 2d 502 (SDNY 2000).

       "In discrimination cases, summary judgment for defendant is appropriate only if "the employer has come forward with evidence of a dispositive nondiscriminatory reason as to which there is no genuine issue and which no rational trier of fact could reject." *Cronin v. Aetna Life*

*Ins. Co., 46 F.3d 196, 203 (2d Cir. 1995).* Because the issue of the employer's hidden intent is so salient, the Second Circuit has emphasized that trial courts must be especially chary about disposing of claims on summary judgment. *See, e.g., Gallo, 22 F.3d at 1224*; *Montana v. First Fed. Sav. & Loan Ass'n, 869 F.2d 100, 103 (2d Cir. 1989).*" Cully v. Milliman & Robertson, 20 F. Supp. 2d 636 (SDNY 1998).

## POINT I

Plaintiff concedes this point.

## POINT II

Plaintiff concedes this point.

## POINT III

### PLAINTIFF HAS SATISFIED ALL THE CRITERIA IN ESTABLISHING AND MAINTAINING VIABLE RACE DISCRIMINATION AND RETALIATION CLAIMS

Robert Stevens, the plaintiff herein, was terminated from his employment with the Office of the NYS Comptroller because he was disliked by his African-American supervisors on account of his race. Furthermore, plaintiff stood up to complain about racist remarks made to him by a supervisor, and as a result was retaliated against and terminated.

On this particular set of facts, it is difficult to separate out plaintiff's claim of racial discrimination from his retaliation claim because what occurred here was a series of events or course of conduct beginning with racial epithets and culminating in plaintiff's retaliatory termination. Since plaintiff's claim is that he was terminated based on race discrimination *and* retaliation for complaining about discriminatory remarks by a supervisor in the workplace, and the facts supporting each claim are entirely intertwined, I will discuss both claims and the relevant facts under this point heading.

Defendants' memorandum of law sets forth the standard for claims of employment discrimination and retaliation under Title VII and the New York State and City Human Rights Laws.  *See*, McDonnell Douglas Corp v. Green, 411 U.S. 792, 802-804 (1973).  As discussed in detail below, plaintiff's claim passes McDonnell-Douglas burden-shifting scrutiny.  This being said, however, the Court should keep in mind that courts in this Circuit have held that "it is clear that 'attempting to cram a reverse discrimination case into the *McDonnell Douglas* framework is not a reasonable approach.'" Cully v. Milliman & Robertson, 20 F. Supp. 2d 636 (SDNY 1998) *citing* Eastridge v. Rhode Island College, 996 F. Supp. 161 (D.R.I. 1998).

Plaintiff has established a prima facie case of race discrimination. It is undisputed that plaintiff is a member of a protected class, was qualified for his position, and suffered an adverse employment action.  Defendant argues, however, that there is no basis upon this set of facts to draw an inference that any of the defendants acted with discriminatory intent in terminating plaintiff's employment.  This position is untenable.

"The burden of establishing a prima facie case of employment discrimination has been described as "modest," *Viola, 42 F.3d at 716*, or even "minimal." *Roge v. NYP Holdings, Inc., 257 F.3d 164, 168 (2d Cir. 2001)*. It is a burden of production, not persuasion, and involves no credibility assessments. *Reeves, 530 U.S. at 143*." Dorcely v. Wyandanch Union Free School District, et al., 665 F. Supp. 2d 178 (EDNY 2009).  The temporal element here in and of itself is enough to give rise to an inference of discrimination.  Plaintiff, a Caucasian, reported that his black supervisor had made racist comments to him, and within days his employment was terminated.  As in Gueye v. Evans, 2006 U.S. Dist. LEXIS 82925 (SDNY 2006), "[t]hese facts distinguish this case from those in which isolated racial slurs were made either by an individual

3

unconnected with the adverse employment action or at a temporally distant time from that action." Id.

The requirements for making out a prima facie claim of retaliation differ slightly from a straight discrimination claim in that plaintiff must establish causation between the retaliation or termination and the protected activity. Based on the facts recited in plaintiff's affidavit and reiterated herein, plaintiff has met this burden. The facts of this case closely mirror the facts in Lamberson, supra, where the Court found that the facts were sufficient to maintain a prima facie claim of retaliation, to wit:

> Lamberson was fired approximately two months after he complained to Jacobs about Caver's reassignment and three months after Jacobs gave him a glowing review. This close temporal proximity between Lamberson's complaints and his discharge is sufficient circumstantial evidence of causation, particularly when the discharge followed so closely on the heels of a positive performance review. *See Meckenberg, 42 F. Supp. 2d at 382*….This evidence, taken together, is sufficient to support an inference that, despite defendant's articulated reason for the discharge, the decision to fire Lamberson was motivated, at least in part, by retaliation. *See James*, 2000 WL 1752908, at *6; *Gordon*, 2000 WL 1658156, at *4; *Fields, 115 F.3d at 120*. Accordingly, summary judgment is denied with respect to Lamberson's retaliation claims. Id.

Defendants also attempt to thwart plaintiff's retaliation claim in arguing that plaintiff's complaints about Williams' racist remarks in the workplace was not a protected activity because Williams' "stray remarks" were not unlawful. Though defense counsel tries to paint a picture for this Court of a couple of harmless, racially-inspired jabs (if there can even be such a thing), he neglects to tell the Court the rest of the story. After defendant Williams made inappropriate racist comments to plaintiff in the workplace, plaintiff felt very uncomfortable. He felt that defendant Williams did not like him because he was white, and would continue to make things difficult for him as she had done in his two days on the job with her. This was a reasonable belief since defendant Williams was the audit supervisor and plaintiff's immediate superior. In

4

addition to his apprehension about continued interaction with defendant Williams, plaintiff's character and personality was such that he cared very much for adherence to office policy and to rules and regulations, generally, and he knew that formal office policy was that racist attitudes and especially statements would not be tolerated.  For all these reasons, plaintiff approached defendant Williams' superior, Kenrick Sifontes.

Defendant Sifontes did not respond at all in the manner plaintiff expected him to.  He deviated completely from office policy and from norms of common decency and told plaintiff flatly, "don't go there", thereby refusing to hear plaintiff's complaint or even acknowledge that an incident of racism and/or discrimination occurred in the workplace.  Mr. Sifontes may have, however, informed defendant Williams that plaintiff approached him.  In one way or another, defendant Williams discovered that plaintiff had complained of her racist remarks and began her campaign of retaliation.  Williams began to complain about plaintiff's job performance to his supervisor, Stephen Lynch, in retaliation for plaintiff's legitimate gripe about Williams' racist attitudes and comments.   For example, Williams reported plaintiff's late arrival on the first day at the new jobsite, which lateness she had previously excused since plaintiff explained that he had experienced a travel delay.  Williams also fabricated other late arrivals.  As a result of Williams' false complaints, plaintiff was summoned to meet with Stephen Lynch.  During the course of this meeting, plaintiff reported Williams' racist remarks and defendant Sifontes' refusal to hear and address this very serious situation.

Plaintiff persisted.  When he composed an e-mail and sent it to defendant Lynch, the very same day, as the defendants' story goes, defendant Williams reported that another employee (whose identity was kept confidential until this summary judgment motion) overheard plaintiff

saying that he felt like shooting someone.  Three days later, plaintiff was placed on administrative leave and within two weeks plaintiff was terminated.

After making out a prima facie case of discrimination/retaliation, the burden shifting test shifts back to defendant to articulate legitimate reasons for plaintiff's termination.  Defendants have set forth a number of stories to support plaintiff's termination, not the least of which are the threats of violence in the workplace.  Defendants also accuse plaintiff of being insubordinate, demonstrating an inability to work with others.  Further still, defendants assert that plaintiff was ultimately terminated after he failed to call in to his employer one day during his administrative leave period.

The burden then shifts back to plaintiff to show that the reasons stated by the employer for the termination decision are in fact pretextual, aimed at covering up the employer's true discriminatory motive.  "A discrimination claimant 'may show pretext by demonstrating such weaknesses, implausibilities, inconsistencies, incoherences, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted nondiscriminatory reasons.' *Bombero v. Warner-Lambert Co.*, 142 F. Supp. 2d 196, 203 n.7 (D. Conn. 2000) (internal quotation marks and citations omitted), *aff'd 9 Fed. Appx. 38 (2d Cir. 2001)*.'" Dorcely, *supra*.

The plaintiff in this case received satisfactory or above satisfactory evaluations consistently.  He even was the recipient of an award for his stellar performance on one particular audit.  Despite now being accused by defendants of not getting along with co-workers and supervisors, it was reported on plaintiff's evaluations that he "exceeds performance standards" in the area of interpersonal skills.  Additionally, plaintiff's final evaluation, which was crafted

during his thirteen-month of employment and after he had already been provided with a standard twelve-month evaluation, cites instances as supporting the employer's termination decision that, apparently, the employer did not deem worth of mention at the time of actual occurrence. More factual background and detail is set forth in plaintiff's affidavit submitted herewith.

On the basis of all of the relevant facts and law presented in opposition to defendants' motion for summary judgment, plaintiff's claims of discrimination and retaliation must survive and this case must be allowed to proceed to trial.

## POINT IV
(in response to defendants' Point V)
### ALL INDIVIDUALLY NAMED DEFENDANTS PARTICIPATED IN THE RETALIATION AGAINST AND TERMINATION OF PLAINTIFF

The naming of individually named defendants in this lawsuit was not at all arbitrary. Plaintiff named those individuals who were involved in the retaliation or termination decision in some way. The details of each defendants involvement is set forth in the documents accompanying this summary judgment response, as well as in the complaint. It is plaintiff's position, in accordance with case law on point, that because these defendants "may potentially be held liable under New York law…they [should] remain in the case. *See, e.g. Tomka, 66 F.3d at 1317"* Lamberson, *supra.*

## POINT V
(in response to defendants' Point VI)

Plaintiff consents to this relief so long as defense counsel represents that the defendants possessing the authority to award the relief requested in the complaint will remain in the case.

## POINT VI
(in response to defendants' Point VII)

Again, plaintiff consents to this relief so long as defense counsel represents that the defendants possessing the authority to award the relief requested in the complaint will remain in the case.

## POINT VII
### SUMMARY JUDGMENT IS NOT APPROPRIATE AT THIS JUNCTURE BECAUSE DEFENDANTS HAVE NOT TURNED OVER ANY DOCUMENT DISCOVERY AND, FURTHER, DEFENDANTS' EXHIBITS OTHER THAN DEPOSITION TRANSCRIPTS SHOULD NOT BE CONSIDERED BY THIS COURT BECAUSE THOSE DOCUMENTS RELIED UPON BY DEFENDANTS IN SUPPORT OF THE INSTANT MOTION WERE NEVER TURNED OVER TO PLAINTIFF

Absent discovery, a summary judgment motion may be deemed premature and denied by the Court on that basis. Monclova v. Colon, 2001 U.S. Dist. LEXIS 2459 (SDNY). By the same principle, even in the absence of particularized discovery demands, parties are obliged by Fed. R. Civ. Pro. R. 6. Since defendants have failed to turn over any documentation whatsoever (short of two sheets of paper at deposition of plaintiff) in this case, this motion for summary judgment is inappropriate and should be denied. Further, plaintiff would be remiss not to mention that defendants have offered into evidence in support of this motion that plaintiff has never even seen nor had the opportunity to review, and that plaintiff's counsel did not even know existed.

**<u>CONCLUSION</u>**

For the foregoing reasons, plaintiff respectfully requests that this Court deny defendants' motion for summary judgment and allow plaintiff's claims for relief on the basis of unlawful race discrimination and retaliation in the context of his employment, in violation of Title VII and New York State and City Human Rights Law, to be submitted to the trier of fact for determination.

Dated: Brooklyn, New York
      December 13, 2010

                                        _____/S/_____
                                        ROBERT WANKER, ESQ.
                                        425 73rd Street
                                        Brooklyn, New York 11209